## James Cassidy, Plff. in Err., v. Charles Kreamer.

Notice of protest mailed to a person residing in the same town as an indorser, received and deposited next day by such person in the local post-office and thence delivered on the third day to the indorser, is insufficient to charge the indorser.

(Argued March 14, 1888. Decided April 23, 1888.)

July Term, 1887, No. 5, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ. Error to the Common Pleas of Clinton County to review a judgment on a verdict for the defendant in an action of assumpsit, September Term, 1886, No. 22. Affirmed.

The facts as they appeared at the trial before MAYER, P. J., are stated in his opinion (filed after directing a verdict for the defendant), as follows:

This suit was brought by James Cassidy, indorsee, against Charles Kreamer, indorser, on a promissory note, which is as follows:

Lock Haven, Pa., September 1, 1885.

Four months after date I promise to pay to the order of Charles Kreamer, at the First National Bank of Lock Haven, seven hundred and seventy-two and five one-hundredths dollars, without defalcation. Value received.

(Signed) E. E. Brillhart.

Indorsed Charles Kreamer, James Cassidy, Curwensville, Bank of Curwensville, Pa., Third National Bank of Philadelphia, Pa., Lumberman's National Bank of Williamsport, Pa., which last-named bank sent it to the State Bank of Lock Haven, Pennsylvania, for collection.

The note was not paid at maturity, and was placed in the hands of T. M. Stevenson, a notary public residing in Lock Haven, for protest. On the day of the maturity of the note *viz.,* January 4, 1886, it was presented for payment at the bank where payable, by the notary, and protested for nonpayment. Notices of protest to all the indorsers upon the note were mailed by the notary on the evening of January 4, 1886, to the Lumberman's National Bank at Williamsport, Pa., the last indorser. In the ordinary course of transmission by mail, the notices would be received by the Lumberman's National Bank on January 5, 1886. The bank had until the 6th day of January, 1886, to mail the notices to its immediate indorser, the Third National Bank of Philadelphia, which in the ordinary course of transmission by mail would receive it on the 7th day of January, 1886. The Third National Bank had until the 8th day of January, 1886, to send the notices to the Curwensville Bank, which received them on the 9th day of January, 1886, which was in due time. The Curwensville Bank did not undertake to notify James Cassidy, its immediate indorser, although he had his residence in Curwensville, had a family there, and was keeping house at the time. It alleges, as a reason for not notifying Cassidy, that he was in the woods engaged in lumbering, and the cashier expected to see him on his return home.

On the 9th of day of January, 1886, the day on which the notices of protest were received by the Curwensville Bank, the cashier of the bank mailed the notice of protest to Charles Kreamer, received by it from the Philadelphia Bank, to T. M. Stevenson, Esq., the notary public at Lock Haven, Pennsylvania, and directed him to serve the notice on Kreamer. Stevenson received the letter on the 12th day of January, 1886, and on the same day inclosed the notice of protest in an envelope addressed to "Charles Kreamer, City," and deposited it in the Lock Haven postoffice. Kreamer did not receive the notice until the 13th day of January, 1886.

Under this undisputed state of facts, we directed the jury to find a verdict for defendant, being of the opinion that the notice

to Kreamer was insufficient in point of time, and that he was discharged as indorser.

The liability of an indorser is strictly conditional, dependent both upon due demand of payment upon the maker of the note, and also due and legal notice of the nonpayment. The purpose and object of such demand and notice is to enable the indorser to look to his own interest, and take immediate measures for his indemnity. The demand and notice being conditions precedent to the indorser's liability, it is incumbent on the holder to make clear and satisfactory proof of them before he can recover. The law does not require the utmost diligence in the holder in giving notice of the dishonor of a note. All that is requisite is ordinary and reasonable diligence. But what amounts to due diligence or reasonable notice is, when the facts are ascertained, a question of law for the court. Brenzer v. Wightman, 7 Watts & S. 266.

When the Curwensville Bank received the notices of protest, and undertook to resort, in the first instance, to Charles Kreamer, as indorser, by sending notice of protest to him, it was bound to send the notice in the same time as it would have been obliged to do if it had resorted at first to its own immediate indorser, James Cassidy. The bank having received the notices of protest on the 9th day of January, 1886, which was Saturday, was not obliged to give notice until Monday, the 11th day of January, 1886. It had one day after receiving notice to give notice to its immediate indorser, but as Sunday intervened, it had until Monday, the 11th inst., to mail the notices; and on that day it was bound to mail a notice to Kreamer, in order to charge him as indorser, and it would be immaterial whether Kreamer received the notice or not, if deposited in the postoffice on that day. The duty of the bank would have been discharged by mailing it on that day, and the liability of the indorser fixed. But instead of mailing the notice of protest to Kreamer on the 11th day of January the bank transmitted the notice by mail to the notary public at Lock Haven, with directions to hand it to Kreamer. This the notary undertook to do, but the notice was not deposited in the postoffice, and in course of transmission to Kreamer, until the 12th day of January, being a day later than it should have been mailed at Curwensville.

Of course, if Kreamer had received the notice on the 12th day

of January, it would have been in time and sufficient to hold him as indorser. The evidence shows that a letter mailed at Curwensville on the 11th day of January would have reached Lock Haven on the night of the 11th at 10 o'clock and ten minutes, and would have been delivered on the morning of the 12th. The bank having undertaken to send the notice of protest to the notary and employing him as its agent or messenger to give notice of the protest, assumed the risk of its delivery to Kreamer in due time, and the burden of proof is thrown upon the plaintiff to prove such delivery. "So it lies on the plaintiff to show that notice was given and received before action brought. Therefore, where the notice was given and the action brought on the same day, the plaintiff was nonsuited, because he did not show by affirmative evidence that the notice was received before the writ issued." Byles, Bills, 3d ed. p. 531, 7th ed. p. 289.

"The holder is not bound to send notice by mail, and he may, if he pleases, in all cases send it by a special messenger. In such cases it will be sufficient if the notice reaches the party entitled thereto on the same day that it would have reached him in due course of mail, although later if within business hours. . . . And the holder is responsible if his messenger do not deliver the notice within the necessary time and the party is discharged." 2 Dan. Neg. Inst. pp. 76, 77.

For the reasons here given, we were of the opinion that the defendant was discharged from his liability as indorser, and directed the jury to find a verdict in his favor.

The assignments of error specified the action of the court: (1) In refusing to submit to the jury the disputed fact as to the date the defendant actually received notice of the dishonor of the note in suit; and (2) in instructing the jury to find a verdict for the defendant.

*Roland D. Swoope* and *H. T. Harvey,* for plaintiff in error.— In deciding what is sufficient notice of dishonor, the law does not recognize fractions of a day, nor does it require the utmost possible diligence; all that it requires is ordinary, reasonable diligence. Bank of Alexandria v. Swann, 9 Pet. 33, 9 L. ed. 40.

All that is necessary, when notice is sent by a messenger, is that it arrive during business hours of the same day that the

post would have brought it. Bancroft v. Hall, Holt, N. P. 476; Byles, Bills, 5th Am. ed. p. 421, note.

It is only when the facts are undisputed that the question of due diligence is for the court. Haly v. Brown, 5 Pa. 178; Smith v. Fisher, 24 Pa. 222; Jones v. Wardell, 6 Watts & S. 399–401.

It is not necessary that the notice of dishonor be given by the holder; if given by any person authorized by the holder, it is good. Byles, Bills, 5th Am. ed. p. 432, note 1.

For purposes of protest and notice, each bank or banker to whom the note is transmitted for collection is to be treated as a distinct and independent holder, and has an entire day after receiving notice, within which to forward notice to the prior indorser. Story, Prom. Notes, 415; 1 Parsons, Bills & Notes, 513.

Upon the same principle it is held that where the holder of a note employs an attorney or agent to give the notice of dishonor, instead of mailing it himself, the attorney or agent is entitled to an entire day after receiving notice from his principal, within which to notify the prior indorser. Byles, Bills, 5th Am. ed. 428.

*J. R. Youngman* and *C. G. Furst* for defendant in error.

PER CURIAM:

The law concerning notice of the protest of negotiable paper has been so well disposed of by the opinion of the learned judge of the court below that further comment on that branch of the case is unnecessary. Indeed, the only exception we have for consideration is that which complains of the ruling of the court in refusing to submit to the jury the alleged disputed fact of the time when the defendant actually received notice of the dishonor of the note. But the burden of proof was on the plaintiff. Had the Curwensville Bank mailed the notice to Kreamer on the 11th of January, proof of that fact would have been sufficient; instead of this, it mailed the notice to a special messenger residing in the same town with Kreamer, who, instead of delivering it as he might have done on the 12th, dropped it into the postal box, which was no delivery at all. Kreamer v. M'Dowell, 8 Watts & S. 138.

Had Kreamer received it, the delivery would, of course, have

been complete; but of this there was no evidence, while he testifies that he did not get it until the 13th, one day too late. It follows that there was nothing to submit to a jury, and the court could do nothing but direct a verdict for the defendant. While, therefore, the counsel for the plaintiff in error has given us a very able and ingenious argument in favor of a theory adverse to that of the court, we cannot see our way clear to reverse the judgment.

The judgment is affirmed.